UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES J. FLORES,<br><br>               Petitioner,<br><br>      v.<br><br>JAMES HALL,<br><br>               Respondent. | ) CASE NO. CV 02-03613 MMM (VBK)<br>)<br>)<br>) ORDER MODIFYING AND ADOPTING<br>) REPORT AND RECOMMENDATION OF<br>) UNITED STATES MAGISTRATE JUDGE<br>)<br>)<br>)<br>)<br>) |

      Petitioner James Flores was convicted in state court on November 16, 1998, of simple kidnapping and forcible oral copulation.[1] The jury found that Flores had kidnapped his victim, and that his movement of the victim substantially increased the risk of harm. On June 22, 1999, Flores was sentenced to 25 years to life in state prison.[2]

      Following the California Supreme Court's denial of Flores' petitions for habeas review, Flores sought habeas relief in this court. His federal habeas petition, as amended on July 7,

---

[1] Clerk's Transcript ("CT"), 170-174.

[2] Supplemental Clerk's Transcript ("SCT"), 24-28; Supplemental Reporter's Transcript ("SRT"), 8-11.

2005,[3] raises three claims: (1) the California Court of Appeal erred when it failed, after reversing the simple kidnapping conviction, to vacate the sentence enhancement under California Penal Code § 667.61(d)(2) ("Claim 1(a)"),[4] and the evidence was insufficient to support the sentencing enhancement ("Claim 1(b)");[5] (2) the trial court improperly denied petitioner's request to excuse juror number 6 ("Claim 2");[6] and (3) petitioner's appellate counsel provided ineffective assistance by neglecting to challenge the Court of Appeal's failure to vacate the sentence enhancement under § 667.61(d)(2) ("Claim 3(a)")[7], and by failing to argue that a sentencing enhancement based on aggravated kidnapping was "totally inappropriate" ("Claim 3(b)")[8].

On June 15, 2006, Magistrate Judge Victor B. Kenton filed a Report and Recommendation concluding that Claim 1(b) merited habeas relief and recommending that the court grant a conditional writ of habeas corpus giving the State of California 60 days to resentence Flores.[9]

Pursuant to 28 U.S.C. § 636, the court has reviewed the petition, all of the records and files herein, Judge Kenton's Report and Recommendation and respondent Yates' objections thereto, and has made a de novo determination of the issues presented. Based on its de novo review, the court approves and adopts the findings and conclusions set forth in Judge Kenton's Report and Recommendation with respect to Claims 2 and 3. With respect to Claim 1(b), the court declines to adopt Judge Kenton's findings and conclusions for the reasons stated, and denies the claim.

---

[3] Petitioner's Filing of the Second Amended Complaint In Compliance With The Court's June 15, 2005 Order ("Second Amended Petition").

[4] Second Amended Petition, 6.

[5] *Id.*; Attachment to Second Amended Petition ("Attachment"), 5, 28.

[6] Second Amended Petition, 6.

[7] Attachment, 33.

[8] *Id.*

[9] Second Report and Recommendation of United States Magistrate Judge ("R&R"), 1.

2

## I. FACTUAL BACKGROUND

The facts, as set forth in the California Court of Appeal's opinion, are as follows:

[Flores] and his wife . . . were married for 23 years and had 4 children. They separated in April 1998, and [his wife] moved to Bakersfield to live with her sister. . . . [Flores] remained in the family apartment in Isla Vista.

About a month after the separation, [Flores' wife] agreed to exchange automobiles with [Flores] so that he could visit his mother in New Mexico. On May 24, 1998, [Flores' wife and her sister] traveled from Bakersfield to Isla Vista, arriving in the early evening.

[Flores] was not at home when they arrived and [his wife] telephoned him from a public telephone. [Flores] seemed angry when [she] informed him that her sister had accompanied her.

[Flores' wife and her sister] returned to the Isla Vista apartment. [His wife] parked her automobile on the street and [the two women] walked to the apartment. When [Flores] greeted them, he appeared 'angry' and 'crabby.'

[Flores, his wife, and her sister] walked to the apartment building parking lot. [Flores] began removing personal items from his automobile. He became angry when he learned that [his wife] had parked on the street. [Her sister] volunteered to move [the] automobile to the parking lot.

Once [the sister] left, [Flores] asked [his wife] if she would 'give [him] any pussy?' [She] responded, 'No,' but [Flores] said, 'Yes.' [Flores] grabbed [his wife] by her hair and arm, and pushed her through the parking lot along a walkway to the apartment. [She] was frightened and held on to a stairway railing but [Flores] pulled her away.

When they reached the apartment, [Flores] threw [his wife] inside causing her to hit her head on a glass table. [She] attempted to keep the front door open with her legs and feet. Flores kicked and 'stomp[ed]' on her legs and feet so that he could close the door. He then locked the deadbolt.

1  [Flores] pulled [his wife] from the floor and threw her on the stairway, where she hit the back of her head on the wall or the railing. [Flores] pushed her upstairs and ordered her to disrobe. [She] complied because she was frightened. [Flores] hit [her] in the chest, arm, and head with his closed fist. He ordered her to orally copulate him.

Meanwhile [her sister] drove to the parking lot and walked to the apartment. Upon finding the door locked, she called for [her sister, Flores' wife]. When no one responded, she walked to the back of the apartment building and threatened to summon police officers.

[Flores] forced [his wife] to appear at the window and tell [her sister] to wait. He choked [his wife] as he forced her to the window.

[Flores] then pushed [his wife] back into the master bedroom where he sodomized her. Afterwards, [Flores] threatened to kill [her] if she informed others of the sexual assaults. He also threatened to kill her 'in front of' their son 'to see what kind of man [the] son was.'

[His wife] hurriedly dressed and went to the parking lot. As she and [her sister] prepared to leave, [Flores] threatened her against disclosing the assaults.

[Flores' wife and her sister] drove to the Santa Barbara Police Department and reported the crimes. [Flores' wife] had contusions on her forehead, head, leg, and back. To the interviewing police officer, she appeared fearful and had a 'vacant look' in her eyes.

A registered nurse trained to examine sexual assault victims examined [Flores' wife] and found that her anal area was red and tender.

At trial[,] [Flores' wife] testified that [Flores] had physically abused her previously. She described incidents where he inexplicably became angry and hit her. [She] also testified that she had sexual intercourse with [Flores] over the Mother's Day weekend, although they no longer resided together.

[Flores] testified that the oral copulation was sodomy were consensual. He

4

    denied forcing [his wife] into the apartment and stated that she took him by the hand into the apartment to 'talk.' [Flores] explained that [she] later became enraged when he informed her that he had a girlfriend. He stated that [she] may have injured herself when she physically attacked him after he requested a divorce. [Flores] denied kicking or striking her but admitted seizing her wrists to calm her.

    [Flores] also testified that he spent the evening following the assaults at the home of a friend because he feared confronting his children.

    The prosecutor presented photographs of [Flores' wife's] injuries as well as photographs of the apartment building parking lot, the walkway to the apartment, and the courtyard of the apartment building."[10]

On November 16, 1998, a jury convicted Flores in Santa Barbara Superior Court of one count of simple kidnapping in violation of California Penal Code § 207(a) (Count 1), one count of forcible oral copulation in violation of Penal Code § 288a(c) (Count 2), one count of forcible sodomy in violation of Penal Code § 286(c) (Count 3), one count of corporal injury to a spouse in violation of Penal Code § 273.5(a) (Count 4), and one count of making terrorist threats in violation of Penal Code § 422 (Count 5).[11] Count 1 charged Flores with kidnapping to commit oral copulation and/or sodomy in violation of Penal Code § 209(b)(1); the jury, however, found Flores guilty of the lesser included offense of simple kidnapping.[12] As respects Counts 2 and 3, the jury found that Flores had kidnapped his wife and that his movement of her substantially increased the risk of harm beyond the level necessarily inherent in the crimes of forced oral copulation and sodomy.[13] This finding triggered application of Penal Code § 667.61(d)(2), which requires that the trial court sentence a defendant found guilty of committing certain specified

---

[10] Answer to First Amended Petition for Writ of Habeas Corpus; Memoradum of Points And Authorities; Exhibits ("Answer to First Amended Petition"), Ex. B, 91-94.

[11] CT, 170-174.

[12] *Id.* at 87, 170.

[13] *Id.* at 171-172.

5

1 sexual offenses under specified aggravating circumstances to a lengthy indeterminate term – either 15 years to life or 25 years to life depending on the aggravating circumstance. See *People v. Jones,* 58 Cal.App.4th 693, 703 (1997). On June 22, 1999, Flores was sentenced to 25 years to life in state prison.[14]

On May 9, 2000, the California Court of Appeal reversed the simple kidnapping conviction. It concluded that the record showed that Flores moved the victim only 75 feet, below the 90-foot minimum to establish asportation.[15] Flores' appellate counsel did not challenge the sentence enhancement under Penal Code § 667.61(d)(2) on the same grounds – i.e., that there was insufficient evidence in the record to support it –[16] and the Court of Appeal did not vacate or otherwise modify the enhanced sentence. In his second amended petition, Flores contends that there was insufficient evidence to support application of the § 667.61(d)(2) enhancement (Claim 1(b)), and that appellate counsel provided ineffective assistance by failing to challenge it (Claim 3). On June 15, 2006, Judge Kenton filed a Report and Recommendation. He found that Claim 1(b) had been procedurally defaulted because the California Supreme Court rejected the claim by citation to *In re Dixon*, 41 Cal. 2d 756 (1953). Judge Kenton further concluded, however, that Flores had shown cause and prejudice for the default, because the claim was meritorious and his appellate counsel should therefore have raised it on direct appeal.[17] Considering the merits of Claim 1(b), Judge Kenton found that there was insufficient evidence to support application of the § 667.61(d)(2) sentence enhancement, and recommended that the court grant a conditional writ

---

[14]SCT, 24-28; SRT, 8-11.

[15]Answer to First Amended Petition, Ex. B, 98-99. The court noted that because defendant committed the crime before the California Supreme Court decided *People v. Martinez*, 20 Cal.4th 225 (1999), the legal standard governing the simple kidnapping conviction was that articulated in *People v. Caudillo*, 21 Cal.3d 562 (1978). It appeared, however, to import the 90-foot requirement from *Martinez*.

[16]*Id.*, Ex. A.

[17]Judge Kenton found Flores' separate ineffective assistance of appellate counsel claim barred by the statute of limitations.

6

1  of habeas corpus.[18]

2  After reviewing Flores' petition, all of the records and files herein, Judge Kenton's Report
3  and Recommendation and Respondent Yates' objections thereto, and making an independent
4  determination of the issue presented, the court declines to adopt the Magistrate Judge's findings
5  and conclusions respecting Claim 1(b), and denies Flores' petition.

## II. DISCUSSION

### A. Flores' Insufficiency of the Evidence Claim Fails Because the California Court of Appeal Applied the Proper Asportation Standard under § 667.61(d)(2)

Claim 1(b) challenges the enhancement of Flores' sentence under § 667.61(d)(2). Given that the Court of Appeal reversed his conviction for simple kidnapping, Flores argues that the evidence is insufficient to support the jury's finding that he kidnapped his wife and that his movement of her substantially increased the risk of harm necessarily inherent in forced oral copulation and sodomy.[19] The Court of Appeal determined the evidence was insufficient to support Flores' simple kidnapping conviction because the trial record showed that Flores forcefully carried his wife a shorter distance than the then applicable Califormia law required for simple kidnapping.[20] Respondent counters that a different legal standard governs imposition of a sentence enhancement under § 667.61(d)(2) than conviction for simple kidnapping under § 207(a), and that, applying the proper standard, there was sufficient evidence to support the enhancement.[21]

#### 1. The Asportation Standard for Aggravated Kidnapping, Not Simple Kidnapping, Applies to Enhancements under § 667.61(d)(2)

To be found guilty of kidnapping under California law, the perpetrator must have carried

---

[18]R&R, 1.

[19]Second Amended Petition, 6; Attachment to Second Amended Petition, 5, 28.

[20]Answer to First Amended Petition, Ex. B, 98.

[21]Resp.'s Objections, 1.

7

or moved the victim. This is known as the "asportation" element. *Rayford*, 9 Cal.4th at 11 ("Because section 208(d) proscribes 'kidnap[ing] [with intent to commit rape])' and not merely holding and detaining an individual, it must be construed to contain an asportation requirement."); accord *Martinez*, 20 Cal.4th at 231. The asportation requirement for simple kidnapping differs from that for aggravated kidnapping. As construed by the California courts at the time Flores kidnapped his wife, asportation for purposes of § 207(a), which criminalizes "simple kidnapping", *Rayford*, 9 Cal.4th at 11-12; *Martinez*, 20 Cal.4th at 232, focused solely on "the actual distance a victim [was] moved." *Rayford*, 9 Cal.4th at 14 (citing *Caudillo*, 21 Cal.3d at 574).

By contrast, Penal Code § 209(b), which criminalizes "aggravated kidnapping," *Rayford*, 9 Cal.4th at 11-12; *Martinez*, 20 Cal.4th at 232, required consideration of factors other than actual distance. Section 209(b) makes it a crime to "kidnap[ ] or carr[y] away any individual to commit robbery, rape, spousal rape, oral copulation, sodomy, or sexual penetration in violation of Section 289 . . . if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." CAL. PENAL CODE § 209(b).

The California Supreme Court discussed these elements in *Rayford*, 9 Cal.4th at 12. As respects the requirement that the movement of the victim be more than that which is "merely incidental" to commission of the underlying offense, the Court stated that it was relevant to consider the "scope and nature" of the movement, including "the actual distance a victim is moved." *Id*. The Court cautioned, however, that there was "no minimum number of feet a defendant [had to] move a victim in order to satisfy the first prong." *Id*. It also stated that it was appropriate to consider the "context of the environment in which the movement occurred." *Id*. Turning to the second requirement – that the kidnapping increase the risk of harm to the victim – the Court directed that factors such as "the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes" be considered. *Id.* at 13.

Section § 667.61(d)(2) does not specify whether it incorporates the "simple kidnapping" or "aggravated kidnapping" asportation standard. In relevant part, § 667.61 provides:

8

"(a) A person who is convicted of an offense specified in subdivision (c) under one or more of the circumstances specified in subdivision (d) or under two or more of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 25 years except as provided in subdivision (j). . . .

(c) This section shall apply to any of the following offenses: . . .

    (6) Sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person. . . .

(d) The following circumstances shall apply to the offenses specified in subdivision (c): . . .

    (2) The defendant kidnapped the victim of the present offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense in subdivision (c).[22]

(e) The following circumstances shall apply to the offenses specified in subdivision (c):

    (1) Except as provided in paragraph (2) of subdivision (d), the defendant kidnapped the victim of the present offense in violation of Section 207, 209, or 209.5.[23]

(i) For the penalties provided in this section to apply, the existence of any fact required under subdivision (d) or (e) shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact. . . ." CAL. PENAL CODE § 667.61.

---

[22]*Jones*, 58 Cal.App.4th at 704 (denominating this provision the "aggravated kidnapping circumstance").

[23]*Id.* at 705 (denominating this provision the "simple kidnapping circumstance").

*Jones*, 58 Cal.App.4th 693, addressed the requirements of § 667.61. Although it did not directly discuss whether subsection (d)(2) of the statute incorporated the asportation standard for simple or aggravated kidnapping, it is nonetheless instructive. The defendant in *Jones* argued that the trial court committed error by failing to instruct the jury on the elements of a § 667.61(d)(2) aggravated kidnapping circumstance charged in connection the commission of a sexual offense against one of the victims. *Id.* at 713. Although the trial court had instructed on the elements of kidnapping for robbery, which, like the aggravated kidnapping circumstance of § 667.61(d)(2), requires a finding that movement of the victim substantially increased the risk of harm over and above that necessarily present in the underlying offense, defendant argued that this was insufficient to cover the aggravated circumstance charged in connection with commission of the sexual offense. The court disagreed, noting that the focus of the "risk of harm" element "for purposes of both kidnapping for robbery and the aggravated kidnapping circumstance" was "the movement of the victim during the kidnapping, and the resulting risk of harm." *Id.* Having reached this conclusion, the court noted that "[a]ny substantial asportation which involves forcible control of the . . . victim will satisfy the risk of harm test." Consequently, it held that any failure on the part of the trial court to instruct with regard to the aggravated kidnapping circumstance was harmless because the jury necessarily resolved the factual question adversely to the defendant under the instruction concerning kidnapping for robbery. *Id.* at 715. As the court's holding demonstrates, it equated the "risk of harm" component of the § 667.61(d)(2) aggravated kidnapping circumstance with the crime of kidnapping for robbery under § 209. This strongly suggests that the aggravated kidnapping standard, rather than the simple kidnapping standard, applies to the sentence enhancement under § 667.61(d)(2).

So too does the California Supreme Court's decision in *Martinez*. There, the Court applied the asportation standard for simple kidnapping to the crime of kidnapping a person under the age of 14 in violation of Penal Code § 208(b). *Martinez*, 20 Cal.4th at 229. As framed, the issue before the Court was whether § 208(b) was an enhancement of § 207(a) (simple kidnapping) such that it incorporated the asportation standard associated with simple kidnapping, or whether it defined a separate crime, such that the Court had to determine whether the asportation standard

10

for simple or aggravated kidnapping applied. *Id.* at 231. In answering this question, the Court focused on the fact that, as is the case with the simple kidnapping proscribed by § 207(a), guilt under § 208(b) "arises independently of the commission of any other offense." *Id.* at 232. In contrast, the Court noted, "[a]ggravated kidnapping is for the purpose of robbery or certain sex crimes." *Id.* "Since the Legislature cast th[e] form of kidnapping [proscribed by § 208(b)] in terms of the victim's age rather than the perpetration of an underlying crime," the Court stated, it "infer[red] an intent to incorporate the elements of section 207(a)." For this reason, it held, the "applicable standard for asportation [was] that required for simple kidnapping." *Id.*; *id.* at 233 (noting that *People v. Stanworth,* 11 Cal.3d 588, 598-601 (1974), abrogated on other grounds in *Martinez*, 20 Cal.4th 225, held that the rule in *Daniels*, 71 Cal. 2d 1119, was "relevant only to aggravated kidnapping, which involves an underlying offense"). Because § 667.61(d)(2) does not apply unless an underlying offense has been committed, *Martinez* suggests that it incorporates the aggravated kidnapping asportation standard because the movement of the victim must be considered in the context of the underlying offense.

The language of § 667.61(d)(2), moreover, is virtually identical to Penal Code § 209(b)(2), which defines aggravated kidnapping. The Supreme Court in *Rayford*, 9 Cal. 4th at 14*,* cited the similarity between the statute defining kidnapping for robbery (§ 209(b)) and the statute defining kidnapping to commit rape (then § 208(d)) in concluding that the latter crime incorporated the aggravated kidnapping asportation standard. The Court agreed with defendant that "for all kidnappings which involve an 'associated crime,'" the *Daniels* test applies, and that the "'substantial movement' test should only be retained where there is no 'associated crime.'" *Id.* at 20. It also observed that the language of former § 208(d)[24] was "strikingly similar" to that of § 209(b),[25] and concluded that "in using language parallel to that of section 209(b), which has been

---

[24]The statute provided: "If the person is kidnapped with the intent to commit rape, oral copulation, sodomy, or rape by instrument, the kidnapping is punishable by imprisonment in the state prison for 5, 8, or 11 years."

[25]Prior to recent amendments, § 209(b) provided: "Any person who kidnaps or carries away any individual to commit robbery shall be punished by imprisonment in the state prison for

11

construed to require the two-part *Daniels* asportation test, the Legislature undoubtedly intended to incorporate a similar asportation requirement into section 208(d)." *Id.* at 21. Like former § 208(d), § 667.61(d)(2) uses language parallel to § 209(b). It must be presumed, therefore, that in enacting that section, the legislature intended to incorporate the asportation requirement of § 209(b),

The Court of Appeal's decision in *People v. Diaz,* 78 Cal.App.4th 243 (2000), is not to the contrary. There, the court interpreted § 667.61(d)(2), and held that it incorporated the *Daniels* requirement that "movement of the victim [be] more than incidental to the underlying sex offense." *Id.* at 246. In arriving at this conclusion, the court observed that the "plain wording" of § 667.61(d)(2) "requires two elements: (1) a simple kidnapping (§ 207, subd. (a)); and (2) a substantial increase in the risk of harm to the victim." *Id.* at 246. Judge Kenton cited this statement as evidence that the legislature intended not to incorporate the asportation standard for aggravated kidnapping into § 667.61(b)(2). He also noted that another subsection of § 667.61 referenced § 209, and viewed this as further evidence that subsection (d)(2) incorporated the asportation standard for simple kidnapping. The court respectfully disagrees. First, the *Diaz* court's statement is merely a reference to the definition of "kidnapping" under California law, i.e., "forcibly steal[ing], tak[ing], or arrest[ing] any person." CAL. PENAL CODE § 207(a). Both simple kidnapping and aggravated kidnapping require that there have been a "kidnapping" – that is, a forcible taking of another person. The hallmark of aggravated kidnapping is the second element cited by the *Diaz* court – a substantial increase in the risk of harm to the victim. See *Martinez*, 20 Cal.4th at 232. That increased risk of harm is also a requirement for application of the enhancement in § 667.61(d)(2). While Judge Kenton is correct that § 667.61(e)(1) references § 209, the court concludes, reading the statute as a whole, that the reference to § 209 in § 667.61(e)(1) is a reference to § 209(a), kidnapping for ransom. This type of kidnapping does not require forced movement and thus would not under any circumstances be covered by § 667.61(d)(2). See *People v. Greenberger*, 58 Cal.App.4th 298, 368 n. 56 (1997).

---

life with possibility of parole."

1    For these reasons, the court concludes that § 667.61(d)(2) incorporates the asportation
2 standard for aggravated, rather than simple, kidnapping. The enhancement provision thus requires
3 movement of the victim that is more than incidental to the underlying crime, and that substantially
4 increased the risk of harm to the victim beyond the level inherent in the underlying offense.

5    **2.    The Record Contains Evidence Sufficient To Support Flores' Enhanced
6           Sentence Under § 667.61(d)(2)**

7    Applying this standard, the evidence was sufficient to enhance Flores' sentence under
8 § 667.612(d)(2). Considering the "scope and nature" of the movement, as well as "the context
9 of the environment in which the movement occurred," *Rayford*, 9 Cal.4th at 12-13 (citing *Daniels*,
10 71 Cal. 2d at 1131 n. 5, 1140); *Martinez*, 20 Cal. 4th at 233, the jury could reasonably have
11 found beyond a reasonable doubt that Flores' movement of his wife from the parking area outside
12 the apartment, into the bedroom in his apartment was not incidental to the crimes of forcible oral
13 copulation and sodomy.

14    "Incidental movements are brief and insubstantial, and frequently consist of movement
15 around the premises where the incident began." Because there is no requirement that an
16 aggravated kidnapping victim be moved a minimum number of feet, moreover, even movement
17 over "relatively short distances have been found not to be incidental where [it] results in a
18 substantial change in 'the context of the environment.'" *Diaz,* 78 Cal.App.4th at 247; see also
19 *People v. Jones*, 75 Cal.App.4th 616, 629-630 (1999) (holding, in connection with a charge of
20 kidnapping to commit robbery, that forcing the victim to walk 25 to 40 feet across a school
21 parking lot and get into the victim's car was not incidental to the intended robbery); *People v.*
22 *Salazar*, 33 Cal.App.4th 341, 347 (1995) (moving a rape victim 29 feet from a public walkway
23 outside a motel room, through the room, and into the bathroom was not incidental to the rape).

24    As the *Salazar* Court noted, defendant's movement of the victim 29 feet "crossed
25 significant boundaries (from the public walkway into the motel room bathroom) and was not a
26 necessary or a natural part of committing the rape." *Id.* Like Salazar, Flores crossed the boundary
27 from public area to private space when he dragged his wife 75 feet, from an outdoor parking lot
28

13

into his apartment, and locked the door behind them.[26]

Flores' movement of his wife also satisfies the second prong of the *Daniels* test incorporated into § 667.61(d)(2). To determine "[w]hether the movement subjects the victim to a substantial increase in risk of harm above and beyond that inherent in [the underlying crime]," the court looks to "such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes." *Rayford*, 9 Cal.4th at 13; see also *Martinez,* 20 Cal.4th at 233. In *Jones*, "the critical factor which substantially increased the risk of harm to the victim occurred when [defendant] forced her to move the 40 feet in order to then push her into her car. Although the car alarm was sounding, once he pushed her into the car, she was no longer in public view as when she was in plain sight with appellant holding his hand over her mouth – a situation which would have aroused concern immediately in any onlookers." *Jones*, 75 Cal.App.4th at 629-30.

Flores created a far more dangerous situation for his wife than the conduct that substantially increase the risk of harm in *Jones*. Flores avoided detection, at least initially, and rendered his wife more vulnerable by forcing her into his apartment and locking the door.[27] When his wife's sister threatened to call the police, Flores took advantage of the fact that his wife was captive in the apartment by forcing her to the window to tell her sister that she was all right and that the sister should not call the police.[28] Flores then continued to sexually assault his wife.[29] Flores clearly increased the risk of harm to his wife by isolating her and preventing the one person who knew they were together from intervening to stop the crime.

Consequently, the court concudes that the record contains sufficient evidence to support a finding that the asportation standard incorporated in § 667.61(d)(2) was proved beyond a

---

[26]Answer to First Amended Petition, Ex. B, 91-94, 98-99.

[27]*Id.* at 91-94.

[28]*Id.*

[29]*Id.*

reasonable doubt.[30]

### B. Conclusions Regarding Flores' Claims

The court declines to adopt Judge Kenton's recommendation that a conditional writ be granted based on Claim 1(b). Rather, the court concludes that the claim lacks merit and must be denied.[31] The court adopts Judge Kenton's recommendation that Claims 2 and 3 be denied.

### III. CONCLUSION

For the reasons stated, Flores' petition for writ of habeas corpus is denied, and the case is dismissed with prejudice.

DATED: February 24, 2009

*Margaret M. Morrow*
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

---

[30] This conclusion is not inconsistent with the fact that the jury convicted Flores of simple kidnapping as opposed to aggravated kidnapping under § 209(b). As noted in the Court of Appeal's opinion, "[d]uring deliberations, the jury wrote the trial court inquiring whether aggravated kidnapping required proof that Flores 'wanted oral and sodomy at the start of the kidnapping (in the parking lot)? If he decided on these acts in the bedroom then does this charge apply?' The trial court replied that aggravated kidnapping required an intent to commit oral copulation and sodomy at the inception of the kidnapping. The jury then convicted Flores of simple kidnapping, likely reasoning that Flores's request for 'pussy' indicated an intent to rape rather than commit other sexual offenses." (*Id.* at 97.) Unlike aggravated kidnapping under § 209(b), the § 667.61(d)(2) enhancement does not require that Flores have intended to commit oral copulation or sodomy when he initiated the kidnapping.

[31] Because the court concludes that the claim is not meritorious, it follows that appellate counsel did not render ineffective assistance of counsel providing cause for Flores' procedural default. See *Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) ("[A]ppellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal"); *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) (stating that appellate counsel was not ineffective for failing to raise meritless claims).

15